UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.

        Criminal Case No.:
        20-cr-20489

        Civil Case No.: 22-cv-11814

        Honorable Gershwin A. Drain

ADAM ANTONIO BRADLEY,

        Defendant-Petitioner.

_____/

**OPINION AND ORDER DENYING 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [#45] AND DENYING A CERTIFICATE OF APPEALABILITY**

## I.    INTRODUCTION

On August 4, 2022, Defendant-Petitioner Adam Antonio Bradley filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Bradley makes four claims in his motion, three of which allege ineffective assistance of counsel. Bradley's remaining claim alleges prosecutorial misconduct. The Government filed a Response opposing Bradley's § 2255 Motion on January 30, 2023. Bradley filed a Reply in support of his § 2255 Motion on February 17, 2023. On July 31, 2023, this action was reassigned to the undersigned. For the

reasons that follow, the Court denies Bradley's § 2255 Motion to Vacate, Set Aside, or Correct Sentence.

## II.    FACTUAL BACKGROUND

In January and February of 2020, Special Agent Jacobs of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) made undercover purchases of cocaine from an individual in the city of Detroit.  ECF No. 1, PageID.2-7. On many of these occasions, it appeared that the individual that Agent Jacobs directly purchased the cocaine from was supplied by Bradley immediately prior to the purchase.

On February 26, 2020, law enforcement executed a search warrant at Bradley's residence as a result of the surveillance of many of these undercover purchases. As part of the search of that and another address associated with Bradley, law enforcement recovered amounts of cocaine consistent with distribution. *Id*., PageID.8. Also recovered during this search was a box of plastic baggies and two digital scales, both items consistent with the distribution of drugs. *Id*., PageID.9.  Bradley admitted in a recorded interview with law enforcement that he had sold drugs his entire life and made approximately $800 per week selling drugs. *Id*.  He was released pending further investigation.

On September 28, 2020, Magistrate Judge Steven Whalen authorized a criminal complaint against Bradley sworn out by Special Agent Loy of the ATF. Bradley appeared in Court on September 29, 2020, and was released on bond.

A grand jury indicted Bradley on October 7, 2020, for one count of possession with intent to distribute cocaine. ECF. No.9, PageID.24-28. The indictment included notice to Bradley that he was eligible for an enhanced maximum sentence under 21 U.S.C. § 841. *Id*. at PageID.25.

Bradley initially retained Wright Blake to represent him. ECF No. 7, PageID.22.  On March 1, 2021, the government met with Attorney Blake and Bradley in a proffer session with ATF agents. Bradley provided information related to the potential to cooperate against another individual that Attorney Blake represented. The government was unable to resolve this issue with Attorney Blake and eventually moved for the Court to inquire about how Blake intended to handle the conflict. A hearing resulted in Blake no longer representing Bradley.

After that occurred, Attorney Bertram Johnson was appointed to represent Bradley on May 27, 2021.  Mr. Johnson and the government communicated to re-establish Bradley's cooperation. Johnson's review of the discovery and communication with his client regarding this matter was not immediate, but the

parties eventually were in a place where Bradley's cooperation could have resumed.

However, by the time that occurred, Bradley had several issues on bond. On August 13, 2021, Bradley got into a car accident that resulted in arrest for driving while intoxicated. ECF No. 28, PageID.122.  In September 2021, a probation violation was issued in Saginaw for an offense that he was on probation for committing when he committed this federal offense. On September 29, 2021, and October 5, 2021, Bradley tested positive for cocaine and admitted using cocaine prior to both tests.

On September 28, 2021, Bradley pleaded guilty to the offense charged in the indictment pursuant to a plea agreement.  ECF Nos. 26, 49.

On October 20, 2021, the district judge held a bond hearing and modified Bradley's bond conditions, changing them so that Bradley now had home detention and zero tolerance for any positive drug or alcohol tests. ECF No. 29, PageID.124.

On March 14, 2022, the district judge sentenced Bradley to 60 months' imprisonment.   ECF Nos. 43, 50.

Bradley did not appeal his conviction.  On August 4, 2022, Bradley timely filed this § 2255 petition.  ECF No. 45.  The government responded, asking the Court to find a waiver of the attorney-client privilege. Bradley agreed with that in

4

his reply to the government's motion.   The district judge entered an Order granting the Government's Motion for an order finding a waiver of attorney-client privilege.

## III.   LAW & ANALYSIS

### A. Standard of Review

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.  28 U.S.C. § 2255.  In order for Bradley to prevail under § 2255, he must "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).  An action under § 2255 mandates that the district court grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."[1]  28 U.S.C. § 2255.

---

[1] Because the record conclusively demonstrates Bradley is not entitled to § 2255 relief, a hearing is not necessary.

## B.  Ineffective Assistance of Counsel

The United States Supreme Court set forth a two-prong test for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To demonstrate ineffective assistance of counsel, a petitioner must show both that defense counsel's performance was deficient and that petitioner suffered prejudice as a result.  *Id*. at  687.

In evaluating defense counsel's performance, *Strickland* admonishes lower courts: "Judicial scrutiny of counsel's performance must be highly deferential [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*. at 689.  The Sixth Circuit has observed that a defendant "is not entitled to the most canny lawyer available, only an adequate one."  *United States v. Morrow*, 977 F.2d 222 (6th Cir. 1992)(en banc), *cert. denied*, 508 U.S. 975 (1993).

Even if counsel's performance is deficient, lower courts must still find prejudice to the defendant before granting relief.  "A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696.

1. **Counsel was Not Ineffective for Failing to Request an In-Person Sentencing and for Telling Defendant the District Judge Would Get Angry and Do an Upward Departure**

Bradley first argues that his counsel should have addressed Bradley's request for an in-person sentencing hearing with the district judge. Instead, Bradley claims his counsel informed him that requesting an in-person sentencing hearing would anger the district judge, who would impose an upward variance as a result.

Rule 43 protects a defendant's right to be present during all trial stages, including sentencing. *See* Fed. R. Crim. P. 43(a). However, during the COVID-19 pandemic, Congress authorized federal judges to impose sentence via video teleconference under certain circumstances. *See Coronavirus Aid, Relief, and Economic Security (CARES) Act*, Pub. L.No. 116-136, § 15002(b)(2) (Mar. 27, 2020).

Here, Bradley's assertion that his counsel should have informed the Court of his desire to proceed to the sentencing hearing in-person is belied by the record. The Court thoroughly questioned counsel and Bradley about his decision to proceed via video teleconference rather than wait until the sentencing could be conducted in person. Mr. Johnson confirmed that he had discussed the matter with his client and indicated his client's desire to proceed without an in-person appearance. Moreover, Bradley agreed with counsel's representation that he

7

wished to proceed via video teleconference.  Specifically, the record reveals the

following exchange between the Court, counsel and Bradley:

> The Court:  All right.  And he proceeds, Mr. Johnson, voluntarily here?  He wishes to have this case resolved by sentencing, rather than waiting until some time in the future when, after another delay, we'll be able to do it in person?  He'd rather do it this way sooner, rather than the other way, later?  Is that correct, Mr. Johnson?
>
> Mr. Johnson:  Yes.  My client consents to handling this matter via Zoom.
>
> The Court:  And you've talked with him about that and –
>
> Mr. Johnson:  Yes, your Honor.
>
> The Court: -- discussed whatever questions he may have had?  Yes?
>
> Mr. Johnson:  Yes.
>
> The Court:  Mr. Bradley, is that essentially, correct?
>
> The Defendant:  Yes, your Honor.
>
> The Court:  You wish to proceed now.  You know you could wait and do it later in person in a courtroom, but we can take care of it under the pandemic circumstances electronically, for at least a while longer.  Do you understand you have a choice in the matter, and your choice apparently is to proceed now electronically.  Is that right, Mr. Bradley?
>
> The Defendant:  Yes. I choose to proceed now as opposed to the putting any more delays in the case.
>
> The Court.  Very well.  I accept that and note that, both from the Judicial Conference in Washington and the local United States District Court here in Detroit, and elsewhere in the Eastern District of Michigan, the proper findings have been made and have remained in effect and are still in effect with respect to the propriety of using electronic means for certain criminal actions, chiefly guilty pleas and sentencing.  So we'll proceed on that basis.

ECF No.50, PageID.294-295.  Additionally, Attorney Johnson submitted an

Affidavit wherein he explains that Bradley's claim that counsel informed him "the

Judge would get mad and give him an upward departure if he requested an in-

person sentencing is outrageous and simply not true."  ECF No. 54, PageID.344.

Mr. Johnson further indicates that Bradley "never requested an in-person

sentencing hearing and further stated on the record and in my discussions with him

that he consented to a sentencing using Zoom."  *Id.*

Here, Bradley's counsel and the transcript of the sentencing proceedings

confirm that Bradley expressly consented to appear via video teleconference after

the district judge advised him of his right to wait until he could appear in-person at

his sentencing hearing.  Thus, counsel was not ineffective.  Nor has Bradley

addressed how he could have been prejudiced by the sentencing proceeding via

video teleconference.  Bradley is not entitled to relief on his first claim.

### 2.  Counsel Was Not Ineffective for Failing to Object and Failing to Request More Time to Review Everything

In his next claim, Bradley does not explain what his counsel should have

objected to or why his counsel allegedly needed more time to review the case.

Attorney Johnson entered his appearance on June 3, 2021, and Bradley entered his

plea on September 28, 2021.  This provided counsel with ample opportunity to

review the case materials. Mr. Johnson explains in his Affidavit that:

> During my representation of Bradley, I made sure the government
> knew he wanted to further his cooperation up and until the time of his
> incarceration for violating his conditions of pretrial release.  I clearly
> advised Bradley that due to his home confinement and incarceration
> the government was unable to continue with his cooperation.

*Id.*

Bradley's bare bones claim has not explained how counsel was ineffective or how he was prejudiced.  This claim is without merit.

### 3.  Counsel Was Not Ineffective for Failing to Move to Withdraw Bradley's Guilty Plea

Next, Bradley maintains his counsel was ineffective for failing to move to withdraw Bradley's guilty plea after the plea's terms that were promised were not met. As an initial matter, Mr. Johnson avers that Bradley never requested to withdraw his plea, nor had they ever discussed withdrawal of his guilty plea.  *Id.*, PageID.345.  An attorney's failure to move to withdraw a defendant's plea does not constitute ineffective assistance when the defendant does not clearly make such a request.  *See, e.g., United States v. Scott*, 664 F. App'x 232, 241-42 (3d Cir. 2016) (concluding the attorney was not ineffective for failing to move to withdraw guilty plea when defendant "had not communicated [a] clear desire to do so.")

In any event, Mr. Johnson was not ineffective for failing to move to withdraw Bradley's guilty plea because the filing of such a motion would not have changed the outcome of Bradley's case.  Trial counsel is not ineffective for failing

10

to file a motion to withdraw a defendant's guilty plea when a defendant "does not set forth a reasonable or legitimate basis for the withdrawal of the plea." *Perry v. Lazaroff*, No. 1:16-CV-225, 2016 U.S. Dist. LEXIS 185691, at *14 (N.D. Ohio Nov. 4, 2016)(quotation marks and citation omitted). Before relief can be granted under Rule 11 of the Federal Rules of Criminal Procedure, a defendant must show a "fair and just reason for requesting the withdrawal." Fed. R. Crim. 11(d)(2)(B); *see also United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *abrogated on other grounds by United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000).

Courts consider seven non-exclusive factors in determining whether to permit a defendant to withdraw his plea: (1) the time between the plea and the motion to withdraw, (2) the explanation for the defendant's change of heart, (3) the existence of any claim of innocence, (4) the circumstances of the guilty plea, (5) the defendant's background, (6) the defendant's experience with the criminal justice system, and (7) the prejudice to the government if the motion is granted. *United States v. Quinlan*, 473 F.3d 273, 276-77 (6th Cir. 2007). Here, Bradley does not state what terms he was purportedly promised that were not realized, nor does he address the seven factors courts consider when evaluating a request to withdraw a guilty plea. Bradley does not claim he is innocent and he has significant experience with the criminal justice system with 24 separate criminal

convictions.  Nothing before the Court demonstrates that had a motion for withdrawal of plea been brought, that it would have been successful.

To the extent that Bradley claims he was promised a § 5K downward departure in exchange for his plea, such an assertion is belied by the record of the plea proceedings.  The Government expressly advised the Court that there was no 5K consideration in effect for the case.  ECF No. 49, PageID.278.  Bradley advised the Court that there were no secret deals between the parties and that he understood the terms of the plea agreement. *Id*., PageID.283-285.  The record is devoid of any substantiation for Bradley's claim that he was promised anything, and to the extent he was to be given an opportunity to cooperate, his behavior made that untenable.  Mr. Johnson's Affidavit confirms these circumstances.  ECF No. 54, PageID.345.  Bradley is likewise not entitled to relief on his final claim of ineffective assistance of counsel.

### C.  Prosecutorial Misconduct

Bradley's fourth claim alleges prosecutorial misconduct because the Government purportedly did not follow through with potential cooperation. Two events prevented Bradley's cooperation from occurring.

As an initial matter, Bradley's desire to provide active cooperation was delayed by his attorney's conflict and the subsequent motion practice. Bradley's original counsel's conflict prevented Bradley from moving forward on what

appeared to be his most valuable route of potential cooperation. The Government was unable to resolve this issue with his original defense counsel and it took until June 3, 2021, for Bradley to receive new counsel. After that time, his new attorney needed time to meet with Bradley and understand the issues related to the case and the potential cooperation. For that reason, Bradley's immediate attempt to cooperate was delayed, but it was not due to any actions by the Government.

The second circumstance that impeded cooperation was Bradley's performance on bond. The Government proffered with Bradley on March 1, 2021. After the motion ended with new counsel for Bradley in May of 2021, Bradley began to violate the conditions of his bond. Bradley was arrested for drunk driving in August of 2021 when a citizen called to report him for driving with a flat tire and a tree branch sticking out from under his tire. Bradley later tested positive for cocaine on several occasions. ECF No. 29, PageID.124. Finally, Bradley's bond conditions were changed in October 2021 to require for nearly complete home confinement. In January of 2022, Bradley again tested positive for cocaine and his bond was revoked entirely. ECF Nos. 34, 35.

Bradley is alleging an animus against him and his former attorney that is not supported by the record before the Court. Bradley had a right to conflict-free representation and to continue the most promising route for him to cooperate with the Government. Bradley's motion ignores that he had his bond revoked between

13

plea and sentencing because of repeated bond violations. While on bond, Bradley was charged with a drunk driving offense and tested positive for cocaine on numerous occasions. This behavior–even before the official revocation of his bond–made him unsuitable for active cooperation. The Government then ceased efforts of active cooperation with Bradley, a fact confirmed by Bradley's attorney. ECF No. 54, PageID.345. It was not prosecutorial misconduct that thwarted Bradley's attempts at cooperation, but Bradley's misconduct on bond. There is no constitutional right to cooperate and the government ceased efforts to cooperate with Bradley for legitimate reasons.

Moreover, the government did not make a motion under USSG § 5K1.1 and never promised to do so. *Id.* Bradley did not provide substantial assistance that furthered any prosecution or investigation. 5K1.1 does not provide for reductions for providing information in a single proffer session that provides no tangible results. Bradley's meeting with the government did not result in any direct advancement of any investigation that would warrant such a motion.

Bradley also ignores the fact that the government recognized his attempt to cooperate and made a recommendation near the bottom of the guideline range. In fact, the district judge noted that the government's recommendation and allocution for that recommendation resulted in a sentence 11 months shorter than that which it

originally planned. ECF No. 50, PageID.310.  For all of these reasons, Bradley is not entitled to relief on his prosecutorial misconduct claim.

### D.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2255 Proceedings, which was amended as of December 1, 2009, requires that a district court issue or deny a certificate of appealability when it enters a final order.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c) (2).   Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c) (3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

The Supreme Court has provided that, to demonstrate entitlement to a certificate of appealability pursuant to § 2255, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Court concludes that reasonable jurists would not find it debatable whether Bradley's § 2255 Motion should have been resolved in a different manner, nor would jurists of reason debate whether his claims were adequate to deserve encouragement to proceed further. Therefore, the Court declines to issue a certificate of appealability.

Bradley's § 2255 Motion to Vacate, Set Aside, or Correct Sentence [#45] is DENIED.

A certificate of appealability shall not issue.

SO ORDERED.

Dated: January 31, 2024                          /s/Gershwin A. Drain
                                                 GERSHWIN A. DRAIN
                                                 United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 30, 2024, by electronic and/or ordinary mail.
/s/ Lisa Bartlett
Case Manager